# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO DIAZ-BARBA, ET AL., <br><br> Appellants, <br> vs. <br> KISMET ACQUISITION, LLC, <br><br> Appellee. | CASE NO. 08CV1446 BTM (BLM) <br> 08CV1572 <br> ORDER DENYING MOTION FOR A STAY PENDING APPEAL |

Appellants Alejandro Diaz-Barba and Martha Barba (the "Diaz family") have appealed a judgment of the Bankruptcy Court. They seek a stay of the Bankruptcy Court's order mandating that they turn over a villa overlooking the ocean located in Jalisco, Mexico (the "Villa") to Appellee Kismet Acquisition, LLC ("Kismet"). For the reasons set forth below, the Court DENIES Appellant's motion for a stay of the judgment pending appeal.

## FACTUAL BACKGROUND

In or about 1995, D. Donald Lonie and the Lonie Family Trust (the "Lonies") sold a leasehold interest[1] in the Villa to Jerry and Donna Icenhower (the "Icenhowers.") On March 24, 2000, the Lonies commenced an action against the Icenhowers in district court regarding payment for the sale of the Villa. On March 4, 2002, the Icenhowers transferred their

---

[1] Because the Lonies and the Icenhowers are not Mexican nationals, their interest in the Mexican property was secured by a *fideocomiso* trust rather than a deed of trust.

interest in the Villa to Howell & Gardner ("H&G"), a Nevada corporation.

On November 24, 2003, the district court entered judgment against the Icenhowers for $550,000 plus additional amounts for interest and advances. Shortly thereafter, on December 15, 2003, the Icenhowers filed for bankruptcy protection. On or about June 7, 2004, H&G sold the Villa to the Diaz family, who are Mexican nationals and residents of San Diego, California.[2]

On August 23, 2004, the Trustee of the Bankruptcy estate commenced a fraudulent transfer action against H&G to recover the Icenhower's transfer of the Villa property. Upon learning that H&G had subsequently transferred this property to the Diaz family, the Trustee amended his complaint to add the Diaz family as Defendants in the fraudulent transfer action. On August 3, 2006, the Trustee filed a second, alternative action against H&G seeking a ruling to the effect that (1) H&G was the alter ego of the Icenhowers, and (2) that the assets of the Debtors and H&G should be substantively consolidated *nunc pro tunc* to the petition filing date.

On December 7, 2006, Kismet purchased the Lonies' claim arising from their litigation with the Icenhowers in order to gain possession of the Villa. Wolfgang and Dieter Hahn, who formed Kismet, own the land surrounding the Villa and are developing a golf resort.

The bankruptcy judge consolidated these two actions and issued a decision on June 2, 2008. The bankruptcy court issued two alternative rulings. First, the bankruptcy court found that H&G was the alter ego of the Icenhowers. As a result, even though the Icenhowers had transferred the Villa to H&G prior to the bankruptcy petition, the Villa was still part of the Icenhower's bankruptcy estate at the time of filing the petition. The Court therefore ruled that the subsequent transfer of the Villa to the Diaz family was avoidable as an unauthorized post-petition transfer. Alternatively, the bankruptcy court ruled that even if the Villa was not a part of the estate at the time of filing the petition, the transfer from the Icenhowers to H&G was avoidable as a fraudulent transfer (i.e.*,* transfer made by the creditor

---

[2] Because Appellants are Mexican nationals, they obtained legal title to the property as opposed to an assignment of the *fideocomiso* held by H&G.

"with actual intent to hinder, delay, or defraud any creditor of the debtor") and recoverable from the Diaz family, the subsequent transferee. Accordingly, the bankruptcy court ruled that Kismet is entitled to recover the Villa and ordered that the Diaz family take all actions necessary to undo the unauthorized transfer and reconvey the property to a *fideicomiso* trust for the benefit of Kismet. The bankruptcy court also provided for the alternative of a money judgment for Kismet at Kismet's sole option.  It appears that Kismet has not chosen to exercise its option for a money judgment.

The Diaz family has appealed this judgment to this Court and seeks a stay of the bankruptcy court's order that they turn over the Villa to Kismet pending appeal.

## DISCUSSION

Stay as a Matter of Right

Appellants argue that they are entitled to an automatic stay of judgment upon filing a supersedeas bond pursuant to Federal Rule of Civil Procedure 62(d) and Bankruptcy Rule 7062.   As Appellants themselves point out, stays as a matter of right are limited to cases involving a money judgment. In re Capital West Investors, 180 B.R. 240, 242 (Bankr. N.D. Cal. 1995) Contrary to appellants' argument, the bankruptcy court's order that Appellants turn over the Villa property constitutes injunctive relief not equivalent to a money judgment. Posting a money bond would not adequately compensate Kismet in terms of lost opportunities to develop the property or otherwise take action regarding the property while the appeal is pending. The cases cited by Appellants are inapposite because they deal with instances, such as foreclosure scenarios,  where the judgment directing the transfer of real property is equivalent to a money judgment. See United States v. Mansion House Center Redevelopment Co., 682 F. Supp. 446, 450 (E.D. Mo. 1988) (mortgage foreclosure judgment should be treated like money judgment.)  Here, Kismet is not solely interested in the money resulting from the sale or foreclosure of the property or else it would have opted for the money judgment as offered by the bankruptcy court.  The Court therefore DENIES Appellants motion for a stay as a matter of right upon posting bond.

Discretionary Stay

Bankruptcy Rule 8005 enables courts to provide for a discretionary stay of judgment pending appeal. In order to obtain a stay, appellants must establish the following: (1) appellants are likely to succeed on the merits of the appeal; (2) appellants will suffer irreparable injury; (3) no substantial harm will come to appellees; and (4) the stay will do no harm to the public interest. In re Wymer, 5 B.R. 802, 806 (9th Cir. 1980). Pursuant to Rule 8005, an application for a stay pending appeal must first be presented to the bankruptcy judge. Where the bankruptcy court has denied a stay, the district court reviews this decision for abuse of discretion. Id.; Ohanian v. Irwin, (In re Ohanian), 338 B.R. 839, 844 (E.D. Cal. 2006).

Here, the Court affirms the bankruptcy court's decision that a discretionary stay is not warranted because appellants, the Diaz family, have not established a likelihood of success on the merits. Appellants argue that they have a likelihood of success on the merits because (1) United States courts lack subject matter jurisdiction to determine real property rights in Mexico; (2) the Bankruptcy Code does not apply extraterritorially; and (3) the bankruptcy court's decision violates principles of international comity and Mexico's Calvo doctrine. Aside from these jurisdictional questions, Appellants do not challenge the validity of the bankruptcy court's substantive findings such as whether H&G was the alterego of the Icenhowers or whether the transfer of the Villa was fraudulent.

The Court concludes that appellants have not demonstrated a likelihood of prevailing on these jurisdictional arguments. The Ninth Circuit in Hong Kong and Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998) clearly held that United States courts have *in rem* jurisdiction over all property in the bankruptcy estate, including property outside the United States:

> With certain exceptions, the estate is comprised of the debtor's legal or equitable interests in property "wherever located and by whomever held." . . . The district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate. . . . The court's exercise of "custody" over the debtor's property, via its exercise of in rem jurisdiction, essentially creates a fiction that the property-regardless of actual location-is legally located within the jurisdictional boundaries of the district in which the court sits. . . . This includes property outside the territorial jurisdiction of the United States.

The Court in In re Simon held that provisions of the Bankruptcy Code as they relate to property in the bankruptcy estate do apply extraterritorially. Id. ("[W]e conclude that Congress intended extraterritorial application of the Bankruptcy Code as it applies to the property of the estate.") The Ninth Circuit also held that international comity does not dictate a contrary result where there is no competing bankruptcy proceeding and no "true conflict between domestic and foreign law." Id. at 999.

In the instant case, the bankruptcy court ruled that H&G was the alter ego of the Icenhowers and that, therefore, H&G's interest in the Villa became part of the bankruptcy estate upon the filing of the bankruptcy petition. In their motion for stay, the appellants do not challenge this ruling. Because the bankruptcy court concluded that the debtors' interest in the Villa was part of the bankruptcy estate, the bankruptcy court correctly exercised *in rem* jurisdiction over this property interest. See In re Simon at 996. As set forth in In re Simon, Bankruptcy Code sections have extraterritorial applicability where the bankruptcy estate is concerned. Id.

Appellants' argument that principles of international comity weigh against a finding of jurisdiction in this case are unconvincing. Appellants contend that Mexico's fraudulent transfer laws differ from those of the United States but do not identify the specific conflicts or describe the extent or impact of the conflicting laws. Furthermore, it is the fraudulent transactions in the United States and not any acts in Mexico that give rise to the bankruptcy court's judgment. Appellants' reference to the Calvo clause is also insufficient to establish that the bankruptcy court's exercise of jurisdiction would violate the laws of Mexico. Article 27 of the Mexican constitution which contains the Calvo doctrine states that foreigners may acquire real property

> provided they agree before the Ministry of Foreign Relations to consider themselves as national in respect to such property, and bind themselves not to invoke the protection of their government in matters relating thereto; under penalty, in case of non-compliance with this agreement, of forfeiture of the property acquired to the Nation.

Appellants also point to the provision in the deeds to the Villa which state, pursuant to the Calvo clause, the following:

> JURISDICTION AND COMPETENCE
> For everything relative to the Interpretation and compliance of this agreement, the parties expressly submit to the Laws and Tribunals of the City of Guadalajara, Jalisco or Mexico . . . they also accept to be considered as Mexicans, in regards to the rights derived from this agreement, and that they will not invoke therefore the protection of their Government, in case of breaching this agreement, they would forfeit in favor of Mexico, the rights acquired.

The instant case does not interpret or enforce sale agreements of Mexican property or adjudicate property rights between buyers and sellers of Mexican property but rather voids a transfer of a property pursuant to United States bankruptcy law. The Court does not find any direct conflict between the policy of the Calvo clause and the exercise of bankruptcy jurisdiction over an estate property that happens to be located in Mexico. Furthermore, the remedy provided by the bankruptcy court is consistent with Mexican law. The Court required the Diazes to reconvey the property to a *fideicomiso* trust for the benefit of Kismet. As the Ninth Circuit held in Brady v. Brown, 51 F.3d 810, 819 (9th Cir. 1995), "such an arrangement, if it can be accomplished, does not violate Mexican law." Because Appellants have not established the presence of a "true conflict between domestic and foreign law," the Court cannot conclude that international comity concerns dictate a finding that the bankruptcy court or this Court lacks jurisdiction. For the above reasons, the Court therefore concludes that Appellants have failed to establish a likelihood of success on the merits of the appeal such that a discretionary stay should be granted.[3]

The Court also concludes that Appellants have not made a strong showing that irreparable harm would result if the stay were not granted. Appellants have failed to provide any proof, aside from an unsubstantiated statement in their briefs, that Kismet intends to demolish the Villa to build its golf course. Upon the present record, it is unclear whether the

---

[3] The Court declines to reach questions of subject matter jurisdiction and international comity regarding the bankruptcy court's alternative grounds for relief i.e. avoidance of the Icenhowers' fraudulent transfer of the Villa to H&G and recovery of that property from the Diaz family as a subsequent transferee. The bankruptcy court provided two alternate grounds for judgment, either of which can form the basis for affirming the judgment. Because the Court finds that Appellants have not established a likelihood of success on one of the grounds for judgment, it need not reach the likelihood of success on the alternative ground.

instant appeal will be mooted by the destruction of the Villa property. Furthermore, Appellants contend this was their vacation home. However, the Court takes judicial notice of the website www.villavistahermosa,com which advertises the Villa as a hotel available for tourist accommodations. Contrary to Appellants' arguments, therefore, it appears this property is not being used as a vacation home at present but rather a commercial income property. The Court therefore declines to find irreparable injury on the ground that the Diaz family has an emotional attachment to this property as a vacation home.

Because the Appellants have not established a likelihood of success on the merits and have not made strong showing with regard to irreparable harm, the Court DENIES their motion for a discretionary stay of judgment pending appeal.[4]

For the reasons set forth above, the Court DENIES Appellants motion for a stay pending appeal.

IT IS SO ORDERED.

DATED: September 3, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge

---

[4] The Court need not to analyze the other factors for a discretionary stay such as harm to appellees and public interest concerns. Given the low likelihood of success on the merits and the lack of a strong showing of irreparable injury, these two factors will not change the outcome.